1    NOT FOR PUBLICATION

2

3    UNITED STATES BANKRUPTCY COURT

4    EASTERN DISTRICT OF CALIFORNIA

5    In re                          )    Case No. 17-23627-B-11
                                     )
6    CAPITOL STATION 65, LLC, a      )    DC No. NH-3
     California Limited Liability    )
7    Company,                        )
                                     )
8                    Debtor(s).      )
                                     )
9    _____)
                                     )    Case No. 17-23629-B-11
10   In re                          )
                                     )
11   CAPITOL STATION MEMBER, LLC,    )
                                     )
12                   Debtor(s).      )
                                     )
13   _____)
                                     )
14                                   )
     In re                          )    Case No. 17-23628-B-11
15                                   )
     CAPITOL STATION HOLDINGS, LLC,  )
16                                   )
                     Debtor(s).      )
17                                   )
                                     )
18   _____)
                                     )
19   In re                          )    Case No. 17-23630-B-11
                                     )
20   TOWNSHIP NINE OWNERS, LLC,      )
                                     )
21                   Debtor(s).      )
                                     )
22   _____)

23

24            MEMORANDUM DECISION AND ORDER

25   Introduction

26       The court has before it a motion filed by Township Nine

27   Avenue, LLC ("Township Nine") for clarification of the court's

28   memorandum and order entered on January 8, 2018, in which the

     court granted a motion to approve postpetition financing between

the pre-consolidated debtors and debtors in possession, Capitol Station 65, LLC, Capitol Station Member, LLC, Capitol Station Holding, LLC, and Township Nine Owners, LLC (collectively, "Debtors"), as borrowers, and Serene Investment Management, LLC or its assignee ("Serene"), as lender.  Docket 843.  Township Nine's motion is opposed by Serene and SIM T9 Investors, LLC (collectively, "Serene").  Docket 858.  Township Nine replied to Serene's opposition.  Docket 863.

The court has reviewed the motion, opposition, and reply together with all related declarations and exhibits.  The court has also reviewed and takes judicial notice of the docket in these Chapter 11 cases.  Township Nine's requests for judicial notice at Dockets 847 and 864 are granted.

A hearing on the motion was held on February 5, 2019.  David M. Meegan, Esq., appeared and argued for Township Nine.  Randy Michelson, Esq., appeared and argued for Serene.

At the February 5, 2019, hearing the court stated findings of fact and conclusions of law on the record in open court pursuant to Federal Rule of Civil Procedure 52(a) applicable by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).  This memorandum decision memorializes and supplements the court's oral findings of fact and conclusions of law stated on the record in open court.  See Fed. R. Civ. P. 52(a); Fed. R. Bankr. P. 7052, 9014(c).  To the extent this memorandum decision conflicts with any findings of fact and/or conclusions of law stated on the record, this memorandum decision controls.  See Playmakers LLC v.

- 2 -

1  ESPN, Inc., 376 F.3d 894, 896 (9th Cir. 2004) (citation omitted).

2

3  **Background**

4        Several months after these now substantively consolidated

5  Chapter 11 cases were filed on May 30, 2017, the Debtors filed a

6  motion to approve a *Secured Super-Priority Post-Petition Credit*

7  *Agreement* ("DIP Agreement") between the Debtors, as borrowers,

8  and Serene or its assignee, as lender.  Docket 59 at Exhibit B.

9  Two exhibits attached to that motion are relevant to the

10  disposition of the parties' current dispute:  (1) Exhibit A which

11  is the form of the agreed-upon order granting the motion,

12  authorizing the Debtors to borrow up to $10,000,000.00 in

13  postpetition financing from Serene, and granting Serene a priming

14  lien on all of the Debtors' real and personal property assets;[1]

15  and (2) Exhibit B which is the DIP Agreement.

16        An initial hearing on the motion to approve the DIP

17  Agreement was held on August 29, 2017.  Docket 95.  Following

18  that hearing, the court authorized the Debtors to borrow up to

19  $1,900,000.00 on an interim basis through December 8, 2017.  Id.

20  An evidentiary hearing was also set for December 6, 2017, to

21

22  consider additional evidence and testimony, value the Debtors'

23

24        [1]Serene's super-priority lien primed Township Nine's first
25  priority lien on the Debtors' real and personal property assets.
   That included the Debtors' primary real property asset comprising
26  a development generally known as the Township Nine project which
   encompasses approximately 65 acres in Sacramento, California,
27  bound by North 5th Street on the west, North 7th Street on the
   east, Richards Boulevard on the south, and the American River on
28  the north.  Docket 333 at 2:11-25.

assets, and decide whether to authorize the Debtors to borrow up
to the full $10,000,000.00 on a final basis.[2]  Id.  An interim
order authorizing the $1,900,000.00 borrowing was thereafter
entered on August 31, 2017.  Docket 96.

Upon its conclusion the December 11, 2017, evidentiary
hearing was continued to January 9, 2018, to allow the court to
enter a written decision.  Dockets 280, 282.  A second interim
order authorizing the Debtors to borrow up to $2,000,000.00 was
thereafter entered on December 21, 2017.  Docket 310.

The January 9, 2018, hearing was subsequently vacated
because on January 8, 2018, the court entered a memorandum
decision and order which, among other things, granted the
Debtors' motion to approve the DIP Agreement on a final basis,
granted Serene a priming lien, and authorized the Debtors "to
borrow up to an aggregate of $10,000,000.00, on the terms set
forth in the DIP Credit Agreement."  Docket 333 at 33:26-28.

Throughout the remainder of 2018 the Debtors attempted to
confirm a plan.  They were unable to do so.  Ultimately, the
Debtors and Township Nine entered into a stipulation that
provided the Debtors with a limited opportunity to sell their
real property development.  Dockets 752, 775, 778, & 779.  When
the Debtors were unable to secure a qualified buyer and open
escrow within the time allowed by the stipulation, the automatic
stay terminated and on December 28, 2018, Township Nine

---

[2]The December 8, 2017, hearing was subsequently re-scheduled
to December 11, 2017.  Docket 199.

foreclosed on its collateral, the real property development

project included, as it was authorized to do.  Docket 852.

As the successful bidder at the December 28, 2018, trustee's sale, Township Nine requested a payoff from Serene in order to satisfy Serene's priming lien granted under the DIP Agreement. Docket 845, ¶ 9.  Serene provided Township Nine with a payoff demand that included a $150,000.00 loan extension fee it claimed due under ¶ 9.3 of the DIP Agreement.  Id. at ¶ 10 & Ex. 1 thereto.  Serene asserts that Township Nine is obligated to pay the $150,000.00 loan extension fee to satisfy its priming lien because the loan under the DIP Agreement was extended before it matured.  Docket 858 at 1:16-18 ("To the extent the Court exercises jurisdiction, it should reject Township Nine's interpretation of the [DIP] Agreement and find instead that the [DIP] Agreement matured on August 31, 2018, *and Serene correctly includes in its lien, among other items, a $150,000.00 loan extension fee*." (Emphasis added)).  Township Nine, on the other hand, contends that it is not obligated to pay the $150,000.00 loan extension fee to satisfy Serene's priming lien because the loan matured and therefore was not extended.  And therein lies the parties' dispute.


**Discussion**

The parties' dispute raises three issue: (1) Does the court have jurisdiction to hear and determine the present motion; (2) What is the maturity date of the DIP Agreement; and (3) Is

- 5 -

1  Township Nine obligated to pay the $150,000.00 loan extension fee

2  in order to satisfy Serene's priming lien?

3

4  Jurisdiction

5      Serene asserts that the court lacks jurisdiction to hear and

6  determine Township Nine's motion.  Serene contends that the

7  parties' present dispute involves only a matter of contract

8  interpretation between two creditors the resolution of which has

9  no effect on the estate.  Serene is wrong on both counts.[3]

10      The scope and extent of a bankruptcy court's jurisdiction is

11  succinctly explained in Battle Ground Plaza, LLC v. Ray (In re

12  Ray), 624 F.3d 1124 (9th Cir. 2014).  Ray states as follows:

13
       In determining the scope of a bankruptcy court's
14     jurisdiction, our analysis begins with the statutory
       scheme because the 'jurisdiction of the bankruptcy
15     courts, like that of other federal courts, is grounded
       in, and limited by, statute.'  Celotex Corp. v.
16     Edwards, 514 U.S. 300, 307, 115 S. Ct. 1493, 131 L. Ed.
       2d 403 (1995).
17
       Two statutes, 28 U.S.C. §§ 157(a) and 1334, allow
18     district courts to refer proceedings arising in,
       arising under, or related to the Bankruptcy Code, to
19     bankruptcy courts.  With some limited exceptions not at
       issue here, Section 1334 provides that bankruptcy
20     courts have 'jurisdiction of all civil proceedings

21  _____

22      [3]The DIP Agreement includes a retention of jurisdiction
    provision which states:  "The Debtor and [Serene] hereby consent
23  and agree that the Bankruptcy Court shall have exclusive
    jurisdiction to hear and determine any claims or disputes
24  pertaining to this agreement or to any matter arising out of or
    relating to this agreement."  Docket 59 at Ex. B, ¶ 9.8.  The
25  court recognizes that a retention of jurisdiction provision
    cannot create jurisdiction where jurisdiction does not exist in
26  the first instance.  However, the provision is relevant to
    Serene's consent and it is also relevant to the extent the DIP
27  Agreement is part of the order approving it as discussed below.
28

                              - 6 -

arising under title 11, or arising in or related to cases under title 11.' § 1334(b); see generally Collier on Bankruptcy §§ 3.01-3.03 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010). Section 157(b)(1) provides that 'Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11' that are referred to it by the district court. Congress also provided a non-exhaustive list of core proceedings, see § 157(b)(2), and indicated a matter may be a core proceeding even if state law may affect its outcome, see § 157(b)(3); see also Marshall v. Stern (In re Marshall), 600 F.3d 1037, 1054 (9th Cir. 2010).

The result is that bankruptcy courts have jurisdiction to hear a broad array of issues, but the exercise of their jurisdiction to enter any final order or judgment is limited to (1) 'cases under title 11,' § 157(b)(1); (2) 'core' bankruptcy proceedings that either 'arise under' the Bankruptcy Code or 'arise in' a case under the Code, id.; or (3) cases in which all interested parties 'consent' to the bankruptcy court having jurisdiction to enter a final order in a matter that is 'related to' a case under the Bankruptcy Code, § 157(c)(2); see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S. Ct. 2858, 73 L. Ed. 2d 598 (1982); Harris v. Wittman (In re Harris), 590 F.3d 730, 737 & n.3 (9th Cir. 2009).

In addition, bankruptcy courts retain jurisdiction to enter findings of fact and conclusions of law—which the district court is free to adopt or disregard after de novo review, § 158(a)—in (1) 'non-core' proceedings that either 'arise under' the Bankruptcy Code, 'arise in' a case under the Code, or 'relate to' a case under the Code, see §§ 157(a), (b) and 1334; or (2) "core" proceedings that 'relate to' a case under the Bankruptcy Code, but neither 'arise under' the Code nor 'arise in' a case under the Code, id.

Finally, even if a bankruptcy court does not have 'arising under' jurisdiction, it can retain jurisdiction under a theory of ancillary jurisdiction if re-opening the case is necessary '(1) to permit disposition by a single court of factually interdependent claims, [or] (2) to enable [the bankruptcy] court to vindicate its authority and effectuate its decrees.' See Sea Hawk Seafoods, Inc. v. Alaska (In re Valdez Fisheries Dev. Ass'n, Inc.), 439 F.3d 545, 549 (9th Cir. 2006) (citing Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 379-80,

1   114 S. Ct. 1673, 128 L. Ed. 2d 391 (1994)).

2   Id. at 1130-31 (internal footnotes, reporter page number

3   omitted).

4        Serene focuses its jurisdictional argument almost entirely

5   on the court's "related to" jurisdiction.  Docket 858 at 4:18-

6   5:26.  In so doing, Serene minimizes the court's continuing

7   jurisdiction to vindicate, enforce, and interpret its own orders

8   in an open, pending, and active bankruptcy case.  Id. at 6:1-7-2.

9        When a federal court approves an agreement and the order

10  approving the agreement embodies the terms of the agreement the

11  agreement is effectively the court's order.  Travelers Indemnity

12  Company v. Bailey, 557 U.S. 137, 142 (2009); Kokkonen, 511 U.S.

13  at 381-82.  That is precisely what we have here.  When the court

14  approved the DIP Agreement in its January 8, 2018, memorandum

15  decision and order it made the DIP Agreement part of the

16  memorandum decision and order by authorizing the Debtors to

17  borrow up to $10,000,000.00 from Serene "on the terms set forth

18  in the DIP Credit Agreement."  Docket 333 at 33:27-28.  So while

19  the parties' dispute may involve certain provisions of the DIP

20  Agreement, the provisions of the DIP Agreement are effectively

21  the court's own order, i.e., the memorandum decision and order of

22  January 8, 2018.

23

24       It is also significant that these Chapter 11 cases are open,

25  pending, and active because as the Ninth Circuit stated in Ray,

26  supra: "We have elaborated that a bankruptcy court has subject

27  matter jurisdiction to interpret orders entered prior to

28

- 8 -

dismissal of the underlying bankruptcy case[.]" <u>Ray</u>, 624 F.3d at 1135; <u>see also</u> <u>Wilshire Courtyard v. Cal. Franchise Tax Bd. (In re Wilshire Courtyard)</u>, 729 F.3d 1279, 1289 (9th Cir. 2013) (stating that "it is well recognized that a bankruptcy court has the power to interpret and enforce its own orders"); <u>Chagolla v. JP Morgan Chase Bank, N.A. (In re Chagolla)</u>, 544 B.R. 676, 679-80 (9th Cir. BAP 2016) (stating that, in comparison to "related to" jurisdiction which is not indefinite "[i]t is well established that a bankruptcy court retains *continuing* jurisdiction to interpret and enforce its own orders." (Emphasis added)).

Ray references <u>Beneficial Trust Deeds v. Franklin (In re Franklin)</u>, 802 F.2d 324, 326-27 (9th Cir. 1986), in which the Ninth Circuit characterized the court's jurisdiction to interpret and enforce its own orders in an open and pending case as "arising under" jurisdiction for purposes of 28 U.S.C. § 1334, stating:

> Simply put, bankruptcy courts must retain jurisdiction to construe their own orders if they are to be capable of monitoring whether those orders are ultimately executed in the intended manner. Requests for bankruptcy courts to construe their own orders must be considered to arise under title 11 if the policies underlying the Code are to be effectively implemented.

<u>Id.</u> at 326; <u>see also</u> <u>Ray</u>, 624 F.3d at 1131-32 (explaining <u>Franklin</u>).

Notably, <u>Franklin</u> involved the bankruptcy court's interpretation of an agreement for relief from the automatic stay of § 362(a) - and the order approving it - after the property subject to the agreement and order was foreclosed on and thereby

- 9 -

removed from the estate.  Id. at 326-27.  The Ninth Circuit
nevertheless concluded that did not deprive the bankruptcy court
of jurisdiction to interpret and enforce the agreement and its
order approving it because both concerned an administrative
matter unique to the bankruptcy process and fundamental to the
Bankruptcy Code.  Id.; see also Ray, 624 F.3d at 1131-32
(explaining Franklin).

Like Franklin, the DIP Agreement and the memorandum decision
and order approving it similarly involve core matters of estate
administration unique to the bankruptcy process and fundamental
to the Bankruptcy Code; specifically, as Serene aptly points out
in its opposition, postpetition debtor in possession financing
and the extent of a priming lien under § 364 of the Bankruptcy
Code.  See Docket 858 at 1:16-18.  And like Franklin, although
Township Nine's December 28, 2018, foreclosure removed the
property subject to Serene's priming lien from the estate the
court nevertheless retains continuing jurisdiction in these open
and pending Chapter 11 cases to determine the extent of Serene's
priming lien granted under the DIP Agreement embodied in the
memorandum and decision approving it.  And it is in that respect
that the court is not merely interpreting a loan agreement
between two creditors but, rather, is acting to vindicate,
enforce, and interpret its own order.

The court also notes that Serene itself asks the court to
enforce the order approving the DIP Agreement.  Serene demanded
the $150,000.00 loan extension fee in the priming lien payoff it

- 10 -

submitted to Township Nine.   Township Nine refused to pay that

fee and filed the present motion.   In response to the motion,

Serene asks the court to "find that . . . [it] is entitled to

charge a $150,000.00 loan extension fee."   Docket 858 at 7:10-11.

During oral argument Serene asserted that its request for an

affirmative finding that Township Nine is obligated to pay the

loan extension fee to satisfy its priming lien is not a request

for the court to enforce the order approving the DIP Agreement

because the request is made in an opposition and not in a motion.

There are two problems with Serene's argument.   First, a pleading

or other document is typically construed according to the relief

it requests and not how it is captioned.   See In re Tallerico,

532 B.R. 774, 778 (Bankr. E.D. Cal. 2015) ("the court must

construe motions so as to provide just, speedy, and inexpensive

determination of every case and proceeding" and may re-designate

as necessary).   Second, according to this court's local rules, a

"'Motion' includes all motions, applications, objections, or

other requests made to the Court for orders or other judicial

activity."   Local Bankr. R. 9001-1(n) (emphasis added).

In short, the court concludes that Township Nine's motion is

a motion for this court to enforce, vindicate, and interpret its

own prior order entered in this case.   That order concerns the

administration of estates generally and Serene's priming lien

under § 364 in particular and, therefore, matters unique to and

fundamental under the Bankruptcy Code.   And so in that regard the

court concludes that it has continuing jurisdiction to hear and

determine Township Nine's motion. Serene's objection to the contrary is therefore overruled.

Alternatively, the court concludes that it has "related to" jurisdiction. The test for "related to" jurisdiction is whether the outcome of the proceeding could *conceivably have any effect on the estate* such as by altering the debtor's rights, liabilities, options, or freedom of action (positively or negatively) and which in any way impacts the handling and administration of the estate. Feitz v. Great W. Savings (In re Feitz), 852 F.2d 455, 457 (9th Cir. 1988). A determination of the "Maturity Date" of the loan under the DIP Agreement and whether that date was extended to trigger payment of the $150,000.00 loan extension fee conceivably affects the estate.

In order for Serene to prime Township Nine's first priority lien on the Debtors' assets the court had to find that Township Nine was adequately protected- which it did. Docket 333 at 27:1-28:1. Township Nine asserts that may not be the case based on the stipulated amount of its secured claim and its credit bid at the December 28, 2018, trustee's sale. Docket 863 at 6:4-19. If that is indeed the case, Township Nine asserts that it may have a § 507(b) super-priority administrative claim.[4] The court agrees.

_____

[4]Section 507(b) states as follows:
(b) If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(2) of this section arising from the stay of action against such property under section 362 of

DIP Agreement disbursements are characterized as "Super-Priority Indebtedness." <u>See</u> Docket 59 at Ex. B, ¶ 3.4(i).  That includes fees. Docket 59 at Ex. A, ¶ 2.  "Super-Priority Indebtedness" under the DIP Agreement has "the status of an expense of administration under 11 U.S.C. § 503(b)(1)[.]"  Docket 59 at Ex. B, ¶ 3.4(ii).  Thus, to the extent Township Nine pays any of the DIP loan disbursements in order to satisfy Serene's priming lien, fees included, Township Nine has or will have paid an actual and necessary expense of preserving the estate.  That gives it a claim under § 503(b)(1) which qualifies as the "(a)(2)" claim necessary for a § 507(b) super-priority claim against funds that remain in the estate, to the extent it is not adequately protected.  <u>See</u> Docket 851 at 1.  That affects the administration of the estate and, alternatively, gives the court "related to" jurisdiction over Township Nine's motion.

<u>Maturity Date and Loan Extension</u>

The court concludes that the DIP Agreement loan matured on January 8, 2019, it was not extended on August 31, 2018, and therefore Township Nine is not obligated under the terms of the DIP Agreement and order approving it to pay Serene a $150,000.00

---

> this title, from the use, sale, or lease of such property under section 363 of this title, or from the granting of a lien under section 364(d) of this title, then such creditor's claim under such subsection shall have priority over every other claim allowable under such subsection.
> 11 U.S.C. § 507(b).

loan extension fee in order to satisfy Serene's priming lien.

When the DIP Agreement loan matured depends on what the applicable "Financing Order" is. That is because the "Maturity Date" is defined as "twelve months from the date of entry of the Financing Order[.]" Docket 59 at Ex. B, ¶ 6. Serene asserts that the "Financing Order" is a final or interim order and, specifically, the August 31, 2017, interim order which matured on August 31, 2018, and was extended to August 31, 2019. Township Nine asserts that the "Financing Order" is the final memorandum decision and order of January 8, 2018, which means the DIP Agreement loan matured on January 8, 2019, and was not extended.

The term "Financing Order" is not defined in the DIP Agreement. It is, however, discernable based on the type of order the DIP Agreement contemplated. And so who understood what and when regarding the term need not be consulted.

The DIP Agreement refers to the "Financing Order" as the form of order attached as its Exhibit A. See e.g., Docket 59 at Ex. B, ¶¶ 1.1(i), 2.1(ii) & 3.4(i). Exhibit A to the DIP Agreement states as follows:

EXHIBIT A
to
<u>CREDIT AGREEMENT</u>

<u>FINANCING ORDER</u>

[omitted from service copy, see Exh. A to Motion]

So Exhibit A to the DIP Agreement is effectively the form of order attached as Exhibit A to the motion to approve the DIP Agreement at Docket 59.

- 14 -

The Exhibit A form of order is an order that authorizes the Debtors to borrow up to the full $10,000,000.00 loan amount. So in the court's view, the DIP Agreement contemplates a "Financing Order" that is a final order which authorizes the Debtors to borrow the full $10,000,000.00 loan amount under the DIP Agreement and not an interim order that authorizes the Debtors to borrower some lesser amount. In fact, that is stated in ¶ 9.3(i) of the DIP Agreement which references "the" "Financing Order" as "the" order at attached Annex [sic] A which authorizes the Debtors to borrow up to the full amount of the loan under the DIP Agreement. Docket 59 at Ex. A, ¶ 9.3(i).

The Debtors were not authorized to borrow up to the full $10,000,000.00 loan amount under the DIP Agreement until January 8, 2018, which means the memorandum decision and order entered of date is the "Financing Order" for purposes of establishing the "Maturity Date" of the DIP Agreement. That also means the loan under the DIP Agreement matured on January 8, 2019, it was not extended on August 31, 2018, and therefore Township Nine is not obligated to pay Serene the $150,000.00 loan extension fee under the DIP Agreement in order to satisfy Serene's priming loan.

There are also two other problems with Serene's loan extension argument and its effort to include $150,000.00 in its priming lien. One is credibility. The other is implausibility, and an apparent impossibility.

Serene's loan extension argument strains credibility and borders on frivolous. Serene apparently was unable to decide on

a date to assert as the loan maturity date for purposes of an
extension and thence the $150,000.00 loan extension fee.   At one
point Serene's attorney stated in writing that "[t]here was no
extension of the term of the loan."   Docket 846 at Ex. 2.   Serene
then asserted that the loan under the DIP Agreement matured and
was thereafter extended on September 6, 2018.   See Docket 846 at
Ex. 3.   It finally settled on a loan extension date of August 31,
2018.   See Docket 858 at 1:17-18.   At all times, however, Serene
knew that the "Maturity Date" was January 8, 2019, because its
own account statement - its own business record - states
"Maturity Date- 1/8/2019."   Docket 866 at Ex. 2.

     Under Serene's version of events a loan extension also
appears implausible, if not impossible.   In relevant part, ¶ 6 of
the DIP Agreement states: "[U]pon request made by Debtor to
Lender not less than forty-five (45) days prior to the Maturity
Date the Lender shall extend the term of the Loan, and the
Maturity Date, for an additional twelve (12) months."   Docket 59
at Ex. B, ¶ 6.   Clearly then, a loan extension under the DIP
Agreement requires two things:   (1) a request by the Debtors; and
(2) a request at least 45 days before the "Maturity Date."

     Nobody disputes that the Debtors did not request a loan
extension.   In fact, it is undisputed that "Serene notified the
Debtor [sic] that it would be extending the loan and allowing
further draws after the Maturity Date."   Dockets 858 at 9:12-13
(citing Docket 859, ¶ 5) (emphasis added).   Consequently, the
first loan extension requirement never occurred.   Nor did the

- 16 -

second.   If, as Serene asserts, the loan under the DIP Agreement matured on August 31, 2018, even if additional draws that the Debtors thereafter took in September and November of 2018 could be construed as a loan extension request by the Debtors as Serene suggests in its opposition, those draws occurred after (and not 45 days before) Serene's asserted Maturity Date.   In short, Serene's version of a purported loan extension under the DIP agreement is not plausible or apparently even possible.

**Conclusion**

For all the foregoing reasons,

IT IS ORDERED that Township Nine's motion for clarification is GRANTED.

IT IS FURTHER ORDERED that Township Nine is not obligated to pay Serene a $150,000.00 loan extension fee under the DIP Agreement in order to satisfy Serene's priming lien.

Dated:   February 19, 2019.

UNITED STATES BANKRUPTCY JUDGE

- 17 -

**INSTRUCTIONS TO CLERK OF COURT**
**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Christopher H. Hart
411 30th Street, Suite 408
Oakland CA 94609

Randy Michelson
220 Montgomery Street, Suite 2100
San Francisco CA 94104

David M. Meegan
11341 Gold Express Dr #110
Gold River CA 95670